**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT J. BELUSKO,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:19-790** |
| **v.** | : | **(JUDGE MANNION)** |
| **R.E. CRAWFORD CONSTRUCTION, LLC, and** | : | |
| **AUTOZONE STORES, LLC,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the court in this trip and fall action are the defendants' motions for summary judgment on the plaintiff's claims of negligence. (Docs. 2, 21 & 24). Upon consideration of the briefs, and for the reasons stated below, the court will deny both the general contractor's and the store owner's motions for summary judgment since disputed material facts exist regarding liability for the plaintiff's fall.


**I.    FACTUAL BACKGROUND**

This case arises out of a trip and fall accident in which plaintiff Robert J. Belusko alleges that on July 6, 2017, at the AutoZone store under construction in Wind Gap, Monroe County, Pennsylvania, his foot got caught

in construction debris causing him to fall and sustain injuries. The Wind Gap AutoZone store was owned by defendant AutoZone Stores, LLC, (hereinafter "AutoZone"). Plaintiff was employed as a Building Inspector for the Pennsylvania Department of Labor & Industry, and as part of his job duties he was at the construction site to conduct an inspection. Plaintiff worked as a state inspector for 20 years in various divisions, including 6 years with Labor & Industry. While plaintiff was at the construction job site, he tripped and fell injuring his knee and is now seeking the recovery of non-economic and economic damages. Defendant R.E. Crawford, ("Crawford"), was the general contractor for the AutoZone store being constructed. The area inside the store where plaintiff tripped and fell was in the location where various shrink wrapped pallets of bin boxes were placed.

Plaintiff was scheduled to be at the Wind Gap AutoZone store under construction between 8:30-9:00 a.m. and he was supposed to meet either the person in charge of the mechanical set up, or the general contractor. Crawford's superintendent of the AutoZone Wind Gap project and its sole employee at the construction site was Lavonn Johnson, and he was aware that plaintiff was coming to the store on July 6, 2017 to do a gas line and electrical inspection. Plaintiff's inspection was required to obtain a certificate of occupancy for the store. The person who plaintiff needed to see was

2

Johnson, and he had the duties of managing and overseeing the store project.

On July 6, 2017, plaintiff's gas and electric inspection was to occur outside of the store. When plaintiff arrived at the store as pre-arranged with Johnson, he entered the store wearing an ID that identified him as a state inspector.

Plaintiff walked into a clear area of the store and he noticed a man talking to a group of laborers, so he started walking towards the man. Plaintiff then attempted to ask the man where he should go and he was asked to wait since the group was having a discussion.

Specifically, plaintiff testified:

[A]s I walked towards [the man] I said, excuse me, and he–he was speaking at that time when I said excuse me because I wanted to find out, you know, who he was and maybe he was the guy I was looking for. I said, excuse me, and he motioned to me like wait a minute, I'm speaking, and so with that I thought, well, I could –it was –at least at that point I came to the conclusion that he really was not the general contractor filling in for the usual supervisor... So as I turned–I heard a voice behind me. As I turned to walk away from the pallet, which he was leaning on, a black man came towards me and he said are you the building inspector, so as I went to approach him...he was approximately 10 feet away. As I went to go forward, my foot got wrapped around a piece of banding, and I fell down right there, and he came running over and he said to me, he said -- he told me -- he might have told me his name, I don't remember, but he said are you okay, I saw you fall, and I of course -- I was on the ground, I couldn't get right up, and he said I'm going to get you a chair. I said please. He went and got me like a stool and he rolled it over to me and he helped me up and I sat down

and that person turned out to be -- he worked for -- he was filling in for the general contractor for the construction company.

Plaintiff admitted he is well-aware that construction sites are hazardous environments. In fact, plaintiff was at the Wind Gap AutoZone site two weeks before his fall, and he knew that there was work being completed by some trades workers at the store. Plaintiff was also aware that the setup crew was on site and actively working prior to his injury. On the day of his fall, plaintiff admitted seeing AutoZone's setup crew working and unloading equipment and supplies from pallets inside the store as he first approached them. Further, plaintiff acknowledged that he must "be vigilant" in active work site situations.

Johnson stated that his role for the store was to allow the AutoZone crew to perform their work to setup the interior of the store with shelves and fixtures and, to make sure the building was in operable condition for AutoZone's workers, such as electricity, HVAC and plumbing, so that they were able to perform their work inside the store. Johnson stated that he had no control over AutoZone's workers and that he did not have any duties with organizing its setup crews' deliveries. He stated that the shipments received by the setup crew were not his concern. Johnson said that AutoZone's setup crew managed their shipment of materials for the racks, shelves and

counters to be assembled and put inside the store, and that Crawford had no job duties pertaining to this setup work being performed. Johnson also stated that Crawford does not control where AutoZone's setup crew places the deliveries of racks and counters and, that the crew placed their materials, such as pallets of elbows and pallets of struts, strategically in the store so that they can set things up where they belong. Johnson indicated that the AutoZone setup crew then unbox the various pallets and place the items in the store where they needed to be placed.

In particular, Johnson explained:

> Well, Crawford doesn't have any employees on site other than me, but I have no business messing with any of [AutoZone's setup crew's] racking system or none of that stuff. You know, I wouldn't have to check on any of that because, like I said, like, you know, when they - - they have like 20, 30 people that they train and they're all working together, they all have a specific job in putting these racks together. So nobody else has any business touching any of that because, I mean, you'll be out of sync, you know. You would be in the way messing with their stuff because they have - - everything is by blueprint.

Johnson's duties also included arranging all of the inspections necessary for the store to open. Johnson was asked what his practice was with respect to telling the setup crew if he knew an inspector was coming. He stated:

> I think that the setup crew would be fully–would be fully aware of whatever I'm doing because, like I said, it's my job to turn the building over to them. So if I could answer your question the best way would be

5

the only way that I could turn it over to them is that if I had all of my inspections and everything in a row. So with that being said, then, yes, the construction, the setup crew would be aware of what's going on.

Johnson admitted that it was his job to get all of the required inspections completed so that he could turn the store over to AutoZone and that Crawford was ultimately responsible for obtaining the certificate of occupancy for the store when construction was completed. Then after all of the inspections were completed and the certificate of occupancy was issued, Crawford's work would be complete and it would turn the building over to AutoZone so that it could open the store.

Johnson testified the area in the store where plaintiff fell was a very tight fit, and that plaintiff seemed to know he had to be careful based on how he appeared to be walking. Johnson also testified that the area where plaintiff fell "was clean due to what was going on at the time", and that the crew was working "so that pallet… is going to have, …, some type of debris all around it during the duration of [the crew] building those racks in that area." Johnson also testified that if the fall did not occur, he would have led plaintiff through the area of the fall, past the pallets and out the back door to the gas pump.

Michael Danowski was the Setup Supervisor for AutoZone, and he and his crew go into an empty store and prepare it for opening by setting up all of the fixtures and shelves, and determine where to place merchandise.

Danowski stated that a general contractor like Crawford would build the store structure for AutoZone and that his crew would perform the interior setup for a store which generally takes 13 to 14 days.

Danowski stated that his interactions with the general contractor at a store during a setup time was infrequent and that he would speak with the general contractor only concerning issues regarding building operations, such as if the water or the air conditioning were not working.

Danowski also stated that it was the general contractor's duty, i.e., Crawford through its superintendent Johnson, to coordinate meetings with inspectors even while the setup crew was conducting their work. He pointed out that the AutoZone setup crew does not deal with inspectors at all. He further stated that it was the job of the general contractor overseeing construction to inform the setup crew of an inspector's visit, so that the setup crew could make the area safe. In particular, Danowski stated that when the general contractor gave him notice of an upcoming inspection, he would "make sure that the building is clear", since often times, the inspectors "want all aisles clear to make sure that there's no trip hazard and everything that we have is cleaned up." He also stated that it was regular routine procedure, not just when an inspector was coming, for the setup crew to remove trip

hazards, such as banding on the floor, and Saran wrap on the floor, since these items would be hazards for everyone at the site.

Danowski testified that he could not remember whether he was informed by Johnson that plaintiff would be coming to do an inspection on the day of the fall, and that regardless of whether he knew, the area where the fall occurred should have been clear of trip hazards. He stated that "[a]ll my people are told repeatedly to make sure that all bands and stuff like that is not on the floor when they're working", and as part of the "everyday procedure", "[i]f they cut a band, they're supposed to throw it immediately in the garbage."

Danowski indicated that the area where plaintiff fell was near a pallet of shrink wrapped bin boxes that were used for smaller items, such as O2 sensors, and did not contain any merchandise in them. However, on the day of the fall, the store also had pallets containing inventory. Danowski stated that the bin boxes arrive at the job site not assembled and are constructed and stacked on pallets by AutoZone's setup crew. Danowski also stated that the general contractor does not assist the set-up crew in any manner in setting up the bin boxes, racks and shelving. Nor are Crawford and its employees directly involved in the setup crew's work of unpacking materials and setting up the store.

8

Additionally, plaintiff fell in the store in the area of pallets of bin boxes that were constructed and re-stacked solely by the AutoZone setup crew. This crew also put shrink wrap around the boxes and wrapped them to the pallets. According to plaintiff, his fall occurred in the area of the pallets that had been shrunk wrapped after he was trying to speak with the superintendent, Johnson, when he entered the store to conduct his inspection. He stated that when he tried to go over to Johnson, his right foot got wrapped around a piece of clear banding that was attached to and underneath one of the pallets. He stated that most of the banding was under the pallet and his foot got caught on an approximately nine-inch piece that had formed a loop. The pallet which had the banding plaintiff tripped over contained metal racking used for building out the store and it did not contain AutoZone inventory.

Danowski stated that although he could not recall if Johnson had advised him of plaintiff's visit, if he and his crew had in fact known plaintiff would be at the store on the day of the incident for an inspection, "[he] probably would have moved [the pallets] closer to the wall on the left behind [a] cart with the refrigerator on it" in order "to give the inspector a wider berth to walk past there if he needed to", and clear the area of trip hazards.

## II.   PROCEDURAL HISTORY

This action was commenced when the plaintiff filed his complaint in the Court of Common Pleas of Luzerne County on April 11, 2019. AutoZone then timely removed this case to federal court based on diversity jurisdiction under 28 U.S.C. 1332. (Docs. 1 & 2). The discovery deadline expired on May 1, 2020. On July 31, 2020, both defendants filed their instant motions of summary judgment pursuant to Fed.R.Civ.P. 56, (Doc. 21, Crawford & Doc. 24, AutoZone). Defendants then filed their briefs in support of their motions and statements of material facts. (Docs. 22-23 & 24).[1] Plaintiff filed his briefs in opposition to the motions and his responses to defendants' statements of material facts. (Docs. 25-28). All of the parties submitted exhibits, including plaintiff's deposition transcript, (Doc. 24-1), in support of their respective filings.

_____

[1] AutoZone attached its brief in support and its statement of material facts to its motion for summary judgment, (Doc. 24), in violation of the Local Rules of this court. Also, the statements of material facts of both Crawford, (Doc. 23), and AutoZone, (Doc. 24-2), are not in the proper form since they do not state each concise fact in a separately numbered paragraph. *See* Local Rule 56.1, M.D. Pa. Counsel for Crawford and AutoZone are directed to adhere to the Local Rules of this court in the future.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249 ; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## IV.   DISCUSSION

Since jurisdiction of this court is based on diversity, Pennsylvania substantive law applies. Thus, in this negligence action, plaintiff must prove four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Tameru v. W-Franklin, L.P.*, 350 F.App'x 737, 739 (3d Cir. 2009) (citation omitted).

As this is a claim for damages that occurred while the plaintiff was on a defendant's property, this court must first determine whether the plaintiff is a trespasser, licensee, or invitee. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). *See also* Iavaroni v. Woodloch Pines Resort, 2016 WL 796057, *2 (M.D. Pa. Feb. 26, 2016) ("The existence of a duty owed by a defendant is a threshold inquiry in a negligence action. In premises-liability actions, the duty of care owed by a possessor of land to an entrant upon the land depends upon the status of the entrant at the time of the accident; namely, whether the entrant is a trespasser, licensee, or invitee.").

Here, the parties dispute that status of the plaintiff who was at the AutoZone store to conduct a scheduled official inspection on behalf of the State, which was required for the store to obtain an occupancy permit.

13

Defendants contend that plaintiff was a licensee, while plaintiff maintains that he was a business invitee since he was at the site for purposes of allowing Crawford to obtain the certificate of occupancy and for AutoZone to open its store for business. Plaintiff also states that he entered the AutoZone store by invitation, i.e., "[by] conduct which justifies others in believing that the possessor desires them to enter the land", *Cresswell v. End*, 831 A.2d 673, 675 (Pa. Super. 2003), since both defendants needed and wanted his inspection to complete the project (Crawford) and open the store (AutoZone).

"The Pennsylvania Construction Code Act was adopted in 1999 with the purpose of insuring uniform, modern construction standards and regulations throughout this Commonwealth." *Sosnina v. Schadegg*, 175 F.Supp.3d 498, 503-04 (E.D. Pa. 2016) (citing 35 Pa. Stat. §7210.102). "The Act directed the Department of Labor and Industry to promulgate a Uniform Construction Code." *Id*. at 504 (citing 35 Pa. Stat. §7210.301(a)). Under the Code, an owner must obtain a permit for construction and "[a] construction code official must inspect all construction for which a permit was issued, and the permit holder must insure that the construction is accessible for inspection." *Id.* (internal quotations omitted) (citing §403.64(a)). "A construction code official must conduct inspections of the foundation; plumbing, mechanical, and electrical systems; frame and masonry; and

14

wallboard, and may conduct other inspections to ascertain compliance with the Uniform Construction Code or municipal ordinances." *Id.* (internal citations and quotations omitted). "The Uniform Construction Code applies to all types of construction projects and covers each stage of the construction process", and "advises a premises owner that the inspection of a construction site is pursuant to the law." *Id*. at 506. Further, "[the Code] places certain burdens on those seeking a permit to engage in construction, including inspections", and "[defendants], by seeking a permit, had advance notice of the required inspections." *Id.* at 507.

Section 330 of the Restatement (Second) of Torts provides that a licensee is "one whose presence upon the land is solely for her own purposes, in which the possessor has no interest, and to whom the privilege of entering is extended as a mere personal favor to the individual, whether by express or tacit consent or as a matter of general or local custom."

The court finds that plaintiff was an invitee at the time of the incident; he was at the AutoZone construction site regarding business dealings with the defendants, as he entered the store solely by "invitation" with the intent of conducting an inspection directly related to the business of both defendants, and he was not at the site "solely for [his] own purposes, in which the [defendants had] no interest." Clearly both defendants had an interest in

15

having the construction project inspected so that the store could be completed and the State would issue a certificate to allow the store to be opened for retail sales to the public. "Pennsylvania law defines the term 'invitee' as follows: (1) An invitee is either a public invitee or a business visitor; (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public; (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." *Grantham v. U.S*., 2008 WL 4083922, *7 (E.D. Pa. Aug. 28, 2008) (citation omitted). Plaintiff was thus a business invitee and, "[t]he duty of care owed to an invitee is the highest duty owed to any entrant upon land, and requires landowners to protect invitees from both known and foreseeable harms." *Id*. (citations omitted).

Pennsylvania has adopted the Restatement (Second) of Torts §§341, 343, and 343A, imposing on landowners a "duty to protect invitees from foreseeable harm." *Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983)*. Under Pennsylvania law, a possessor of land will be subject to liability only if he or she:

(a)    knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

(b)    should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c)    fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts §343. Further, the plaintiff must present sufficient evidence to show: (1) the defendant knew or, by using reasonable care, should have known of a dangerous condition; and (2) the defendant helped to create a harmful condition or had actual or constructive notice of the dangerous condition. *Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. Ct. 1994) (citing *Multrey v. Great A. & P. Tea Co.*, 422 A.2d 593, 596 (Pa. 1980)).

Thus, with respect to invitees, "the landowner is subject to liability if it can be expected that the invitee would not discover or realize the danger, or would fail to protect themselves against it." *Grantham*, 2008 WL 4083922, *8 n. 4 (citing Restatement (Second) of Torts §343(b)).

Both defendants contend that there are no genuine issues of material fact as to whether they breached any duty owed to plaintiff regardless of whether he was a licensee or a business invitee.

17

Crawford contends that it had nothing to do with the setup of the interior of the store and that AutoZone exclusively directed and controlled all of the work that was being performed in the interior of the store, including the placement of the pallets in the store, setting up bin boxes, racks and shelving in the area where plaintiff fell. Crawford further argues that it is not liable because it was reasonable to expect that plaintiff would discover or realize the danger, i.e., the large pallets where plaintiff fell. Crawford argues that there was no unreasonable risk of harm to plaintiff from the shrink wrapped pallets and that, based on his years of experience as an inspector, he should have identified any inherent risks present at the active construction site.

In particular, Crawford points out that at the time of plaintiff's fall, there is no dispute that pallets were in the store, either being unloaded or ready to be unloaded by the AutoZone setup crew. Also, in the area where plaintiff fell, the setup crew was working unpacking boxes that were banded together on a pallet and then reassembling them onto another pallet and binding the other pallet with shrink wrap. Further, Johnson testified that Crawford and its employees do not do any work with regard to the pallets that are delivered for the setup crew.

AutoZone argues that summary judgment is appropriate on its behalf even if plaintiff was owed the duty of an invitee since it had no reason to

expect that plaintiff would not discover or realize the danger and hazards when he walked into an active work area in the store. AutoZone argues that irrespective of his status, plaintiff was obligated to protect himself from open and obvious hazards, and that "[he] put himself in a dangerous position and failed to keep a look out, which is the sole cause of his alleged injury." AutoZone also points to the fact that plaintiff had been at the site only two weeks before his fall, that he had knowledge that hazards, such as pallets, were present at the active work site. AutoZone further contends that when plaintiff fell due to plastic debris next to a pallet where its crew were actively working, he knew or should have known the area could be hazardous and that he should keep alert and "be vigilant" at active work sites.

AutoZone cites to Johnson's testimony that individuals were actively working in a reasonable and necessary manner regarding the build out of the interior of the store. AutoZone states that its crew members acted reasonably because they were still in the process of setting up the store. AutoZone also contends that it could not have failed to exercise reasonable care to make the area safe for plaintiff since its staff had no knowledge plaintiff would be present that day. It also contends that since its staff had no knowledge of plaintiff's presence, "it would also be impossible for AutoZone to warn [plaintiff] as to any potential dangers." AutoZone further points out that

plaintiff had no reason to be in the area when he fell and the crew working in that area had no reason to anticipate that he would approach the area.

Initially, the evidence is not clear as whether Johnson notified Danowski and his crew that plaintiff would be at the site on July 6, 2017. Thus, the jury will decide this issue. Moreover, as plaintiff points out, he did not trip over the pallets, rather he fell when his foot got caught in the plastic banding looping out from under a pallet that had been left on the floor by the AutoZone setup crew. He states that he should not be expected to encounter a "hidden trip hazard" such as the banding that caused his fall. In fact, Danowski stated that materials, such as shrink wrap and the banding, should be put in the garbage immediately by the setup crew and should never be left on the floor, particularly when an inspector is visiting the site. Danowski emphasized the "everyday procedure" for his crew, namely, "all my people are told repeatedly to make sure that all bands and stuff like that is not on the floor when they're working. If they cut a band, they're supposed to throw it immediately in the garbage." He stated that his crew was trained regarding this procedure of removing all trip hazards on the floor and that it was to be performed all of the time, "not only if an inspector is coming." Further, as plaintiff indicates, Danowski admitted that "[t]he setup crew also would have

moved the pallets further apart [and closer to the wall] to provide [a wider berth] for an inspector to safely traverse the area."

Additionally, as plaintiff, (Doc. 26 at 9), explains:

> If the removal of fall hazards in general and prior to the presence of an inspector at an AutoZone job site is the norm, then it is not reasonable to expect Plaintiff to realize the danger that there would be clear banding or other hazards on the floor when he arrived for an inspection. Based on his experience at the AutoZone job and other construction sites, it would be reasonable for Plaintiff to believe that such debris and trip hazards would not be present during his inspection, even if work was still occurring.

The court finds that plaintiff has presented sufficient evidence to argue that the piece of clear banding partially hidden under a pallet which caused his fall was not an open and obvious condition, and that the danger from the banding was not one which plaintiff knew or should have had reason to know.

As such, the court find that neither defendant AutoZone nor Crawford is entitled to summary judgment since genuine issues of material fact exist as to whether plaintiff, as a business invitee, should have discovered or realized the danger present at the AutoZone construction site.

Additionally, when determining whether a defendant had constructive notice, "one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and

the accident." *Craig*, 555 F.Supp. 2d 547, 500 (quoting *Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. Ct. 2001)*). Other factors include:

> the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which [the] defendant, as a reasonably prudent person, had to remedy it. *Lanni v. Pennsylvania Railroad Co.*, 88 A.2d 887, 889 (Pa. 1952).

Although "[t]he mere happening of an accident is not evidence of negligence," *Rogers v. Horn & Hardart Baking Co.*, 127 A.2d 762, 763 (Pa. Super. Ct. 1956), a plaintiff may present sufficient circumstantial evidence to show that a defect "had [existed] long enough so that in the exercise of reasonable care the defendant's employees should have discovered and removed it." *Rumsey v. Great Atlantic & Pac. Tea Co.*, 408 F.2d 89, 91 (3d Cir. 1969) (applying Pennsylvania law).

Here, the issue pertains to constructive notice of a man-made condition, and the facts and inferences drawn therefrom, viewed in the light most favorable to the plaintiff, demonstrate the defendants were on constructive notice of a dangerous condition on the AutoZone site. AutoZone's supervisor and setup crew were well aware that they were required to remove all trip hazards and throw them in the garbage, such as the shrink wrap and banding. Therefore, there is a material issue of fact to

22

present to the jury regarding the reasonableness of the defendants' procedures for inspecting the location of the plaintiff's fall for trip hazards on the day of the incident.

Finally, Crawford contends that regardless of plaintiff's status it owed no duty to him because AutoZone was in complete control of the area where plaintiff fell and was in charge of the interior setup work being done there by its crew. Plaintiff counters that Crawford as general contractor for the entire AutoZone store, owed him a duty separate from that owed by AutoZone.

As plaintiff states, (Doc. 26 at 11-12):

> Crawford was in full control of the operation of the building, and the coordination of the inspections necessary to obtain a certificate of occupancy. Defendant Crawford failed in its duty when it did not advise the setup crew of Plaintiff's presence so that they could remedy the known trip hazards in their area of work, and otherwise ensure that the facility could be appropriately inspected by Plaintiff. Mr. Danowski was clear in his testimony that he relied on the general contractor on a job to give him notice when inspectors were scheduled. That notice would allow his crew to clean up any trip hazards present before he inspector arrived. Although Mr. Danowski could not remember whether he had notice of Plaintiff's visit, the measures which he took prior to an inspection were not taken, thus, it is reasonable to conclude that he lacked notice. Ultimately, there is a genuine dispute of fact about whether Mr. Johnson, on behalf of Defendant Crawford, advised Mr. Danowski of Plaintiff's expected presence on July 6, 2017, such that any trip hazards may have been remedied and the harm to Plaintiff avoided.

As such, the court will deny Crawford's motion for summary judgment despite the fact that AutoZone was working in the area where plaintiff fell

since too many disputed facts exist, as explained above, for the court to find that this defendant is entitled to judgment.

In short, the court finds that there are several issues of material fact that a jury must determine regarding whether the alleged acts and/or omissions of Crawford's and AutoZone's employees amounted to a breach of the defendants' duty of care as the possessor of the land on which plaintiff fell.

## V.    CONCLUSION

For the forgoing reasons, the motions for summary judgment of Crawford and AutoZone, **(Docs. 21 & 24)**, will be **DENIED**. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 29, 2021**
19-790-01